RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0075p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

          *v.*                                    No. 07-4363

RICHARD K. BORING,
                    *Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 07-00108—Christopher A. Boyko, District Judge.

Argued: October 21, 2008

Decided and Filed: February 27, 2009

Before: KEITH, MERRITT, and GIBBONS, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Gregory J. Rufo, RUFO LAW FIRM, Canton, Ohio, for Appellant. Phillip J. Tripi, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Gregory J. Rufo, RUFO LAW FIRM, Canton, Ohio, for Appellant. Phillip J. Tripi, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

———————————

**OPINION**

———————————

      MERRITT, Circuit Judge. Defendant Richard Boring was convicted at trial of one count of mail fraud, eight counts of worker's compensation fraud, and one count of making false statements to federal agents. *See* 18 U.S.C. §§ 1001, 1341, 1920. He appeals his conviction and, in the alternative, two aspects of his sentence: his two-point enhancement for obstruction of justice and the calculation of his restitution order. We affirm his conviction, which is supported by sufficient evidence, and his enhancement for obstruction,

which follows logically from the jury verdict.  But we reverse the restitution award and remand the case for resentencing.

## I. Background

Richard Boring was hired by the U.S. Postal Service as a letter carrier in April 1991. One year later, he was elected as a union steward and, two years after that, chosen as president of the union.  In February 2001, he sustained injuries to his shoulders, back, neck, and left elbow.  A year later, he began a series of four surgical procedures, including the removal of a bone spur from his right shoulder (February 2002), the removal of a bone spur from his left shoulder (March 2002), the removal of a piece of collarbone from his right shoulder (August 2003), and the arthroscopic removal of scar tissue (April 2004).  Over the course of these four years, Boring missed work for long periods and collected benefits under the Federal Employees' Compensation Act.

When an employee is injured, the Postal Service's policy is to offer that employee a limited-duty assignment unless his injuries are so serious that they prohibit work altogether.  One of the principal disputes at trial concerned Boring's failure to take a limited-duty job.  He contended that he would have accepted a limited-duty job but was never offered one.  The government contended that he was never offered one because he had misled his doctor about what sorts of limited-duty positions were available (making those positions sound more physically demanding than they really were), thereby inducing the doctor to tell the Postal Service that Boring could not work at all.  The government put on evidence showing that, during the period when Boring was absent from even limited-duty assignment like answering phones, he was coaching baseball and football, sometimes on a volunteer basis and sometimes for a small salary. Video recordings showed him taking snaps under center, throwing a pass, making a straight-arm block, and repositioning players.  Other video showed him putting a sling on his supposedly injured arm after realizing that a postal investigator was videotaping him.  He also completed (and submitted by mail) a series of government forms on which he indicated that he had not worked, even as a volunteer, during the time for which he was seeking benefits.  And when asked by letter and in person whether he engaged in any hobbies or sports, he said that he did not and stated that the only things

he did while out of work were reading at home and going to physical therapy. These filings and false statements form the basis of his prosecution for fraud.

## II. Discussion

*A. Sufficiency of the Evidence*

When a court reviews the sufficiency of the evidence to support a criminal conviction, "the critical inquiry . . . [is] to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). "[T]his inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 318-19 (quotations omitted). Instead, the court should review the evidence "in the light most favorable to the prosecution" and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.

Boring challenges the sufficiency of the evidence on the element of intent. Because intent to defraud is difficult to prove by direct evidence, "a jury may consider circumstantial evidence of fraudulent intent and draw reasonable inferences therefrom." *United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007) (quotations omitted). At trial, the jury was presented with evidence indicating that: (1) Boring had been president of the union and consequently understood the details of the worker's compensation program; (2) he was familiar with the restrictions placed on people receiving worker's compensation; (3) from a previous stint on limited duty (resulting from a back injury), he was aware of an array of limited-duty jobs that were available; (4) he volunteered his time and earned a small salary as a baseball and football coach while he was receiving worker's compensation; (5) while coaching, he was filmed throwing a football, taking snaps under center, repositioning players, and performing a straight-arm block; (6) he was also filmed putting a sling on his arm after discovering that he was being videotaped; (7) during this time, he was not performing even limited work at the Postal Service; and (8) he indicated — on forms, in response to a formal letter, and in person — that he was not engaged in any other employment (including volunteer employment) and that he did not engage in any sports or hobbies.

On appeal, Boring argues that it was the Postal Service's duty to offer him a limited-duty assignment — which he would have accepted if offered — and that the Postal Service's failure to do so vitiates any inference of criminal intent on his part. To support this, he points to his own testimony at trial, where he stated that he had told his supervisor that he would work a limited-duty assignment if it were offered to him and his doctor approved it, but that his supervisor had refused to offer him one. However, the jury also heard testimony from the supervisor, who directly contradicted Boring's version of the conversation and testified that he had asked Boring if he was able to answer phones, and that Boring had replied that the doctor had ordered him not to work at all. The jury also heard from Boring's doctor, who testified that Boring had told him that the only limited-duty assignment available was casing mail (an activity that involves filing mail into a large bookcase-like structure), which the doctor concluded he could not do, and hence checked the "Off Work" box on the form. (The prosecution charged Boring with one count of worker's compensation fraud based on this statement to his doctor, but the jury acquitted him on that charge.)

When faced with conflicting testimony, "[t]he trier of fact, not the appellate court, holds 'the responsibility . . . fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts,'" *Tibbs v. Florida*, 457 U.S. 31, 45 n. 21 (1982) (quoting *Jackson*, 443 U.S. at 319) (ellipsis in *Tibbs*), and we are "loath to override [the factfinder's] conclusion." *Davis*, 490 F.3d at 550. Under this "highly deferential standard," *id.* at 549, we conclude that a rational trier of fact could have found the existence of intent to defraud beyond a reasonable doubt based on the evidence presented. Thus, Boring's conviction is affirmed.

*B. Addition of Two Points for Obstruction*

For a district court to impose an obstruction-of-justice enhancement to a defendant's sentence under § 3C1.1 of the Sentencing Guidelines, the court "must 1) identify those particular portions of defendant's testimony that it considers to be perjurious; and 2) either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002). The elements of perjury are "false testimony concerning a material matter with the willful intent to provide false testimony, rather than

as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). A matter is considered material if it "would tend to influence or affect the issue under determination" if believed. U.S.S.G. § 3C1.1 cmt n.6.

At the sentencing hearing, the court identified the testimony that it considered to be perjurious (the testimony about Boring's conversation with his supervisor). It then made a finding, albeit brief, that encompassed the factual predicates for perjury.[1] That Boring's version of the conversation differed so substantially from his supervisor's version, which the judge and jury both believed, leads to the inference that the testimony's falsity was willful. It is also clear that the subject matter was material, since it directly concerned one of the elements of the crime.

When reviewing a sentence enhancement on appeal, we employ a three-pronged standard. "First, we review the factual determinations made by the district court for clear error. Second, the determination that certain conduct constitutes obstruction of justice, which is a mixed question of law and fact, is reviewed de novo. Third . . . the actual imposition of the enhancement is reviewed de novo." *United States v. Bagget*, 342 F.3d 536, 540-41 (6th Cir. 2003) (citations omitted).

On the first prong, the district court's factual determinations were not clear error. The finding that Boring's testimony was false is supported by the record and by the jury's verdict. As the court noted at sentencing, the jury had to credit the supervisor's testimony and reject Boring's in order to convict. On the second prong, the court's finding that the conduct constituted obstruction, which is reviewed de novo, is also sound. As noted, the discrepancy between Boring's testimony and his supervisor's

---

[1]In the relevant portion of the sentencing hearing, the judge discusses the conflicting testimony between Boring and his supervisor, Mr. Wastler:

> The Court found Mr. Warstler to be very credible, straightforward. I believe the jury did in order to reach their conclusions. And what Mr. Warstler testified to was in direct contradiction to what the defendant testified. The jury would have had to disbelieve completely the defendant's testimony to arrive at the verdicts. And I believe [the prosecutor] has a basis for making the argument for obstruction in the sense of it seemed like at every opportunity, it was either somebody else's fault or a reason or many reasons why he couldn't return to work, wouldn't return to work. The Court will find obstruction of justice; add two.

Sentencing Tr., Oct. 23, 2007, at 31; J.A. 214.

suggests that, if Boring's testimony was false, it was almost certainly willfully so, rather than the product of a faulty memory. And, again, it was on a material matter. Finally, the imposition of the enhancement was correct: perjury is a form of obstruction, which increases the base offense level by two points.

Boring suggests that his enhancement contravenes the comments to § 3C1.1, which state that a defendant's mere denial of guilt does not constitute obstruction (because otherwise his Fifth Amendment rights would be infringed) and that "the Court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory" not rising to the level of obstruction. But the comment explicitly excepts "a denial of guilt under oath that constitutes perjury" from its reminder not to assess an obstruction enhancement for a denial of or refusal to admit guilt. U.S.S.G. § 3C1.1 cmt. n.2*; see also United States v. Burnette*, 981 F.2d 874, 879 (6th Cir. 1992) ("The right to testify at trial, however, does not include a right to commit perjury."). The two-point enhancement for obstruction of justice is subsumed within the jury's verdict and was properly applied.

*C. Restitution Award*

We review de novo the question of whether restitution is permitted under the law, and review the amount of a restitution award for abuse of discretion. *United States v. White*, 492 F.3d 380, 414, 418 (6th Cir. 2007).

The district court ordered Boring to pay the Department of Labor $37,355.27 in restitution, pursuant to 18 U.S.C. §§ 3663, 3363A, and 3664. This figure represents the entire amount that Boring received during the duration of his leave from work, plus a 7% administrative fee. Boring contends that he should not have to pay back the money that he received during the weeks immediately following each surgery, when he was legitimately unable to work. He argues that even if we accept that he used fraud to remain off work and collect benefits longer than he should have and that the entire period represents a single scheme to defraud the Department, there was still some quantum of recovery time that was uncontestedly legitimate, and he should not have to repay the amount he collected then. We agree: the restitution award should be equal to

the total amount Boring received minus the amount he received when he was legitimately recovering from his surgeries and unable to work.

The statutes at issue authorize the imposition of restitution for losses to the victim.  They "require[] that the restitution award be based on the amount of loss *actually caused* by the defendant's offense."  *United States v. Rhodes*, 330 F.3d 949, 953 (7th Cir. 2003); *see also Virgin Islands v. Davis*, 43 F.3d 41, 44-45 (3d Cir. 1994); *United States v. Patty*, 992 F.2d 1045, 1049 (10th Cir. 1993); *United States v. Kenney*, 789 F.2d 783, 784 (9th Cir. 1986); *cf. Hughey v. United States*, 495 U.S. 411, 413 (1990) (holding that the Victim and Witness Protection Act "authorize[s] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction").

The government relies on 20 C.F.R. § 10.529, which provides that an employee who "knowingly omits or understates any earnings or work activity in making a report" will "forfeit the right to compensation with respect to any period for which the report was required."  Under this regulation, if an injured federal employee knowingly misrepresents that he was convalescing the entire time he was away from work, when in fact he did one day of volunteer work, he will forfeit all the benefits he received during that period.  But the government's reliance on this regulation mistakenly conflates forfeiture and restitution.  As the Seventh Circuit recently and cogently explained in a similar case,

> [f]orfeiture and restitution are distinct remedies.  Restitution is remedial in nature, and its goal is to restore the victim's loss.  Forfeiture, in contrast, is punitive; it seeks to disgorge any profits that the offender realized from his illegal activity.  Given their distinct nature and goals, restitution is calculated based on the victim's loss, while forfeiture is based on the offender's gain.  Different adjudicatory procedures apply, moreover, depending on which of these remedies the Government is seeking.  Of particular importance in this case, the Federal Rules of Criminal Procedure explicitly provide that "[n]o judgment of forfeiture may be entered in a criminal proceeding unless the indictment or the information provides notice that the defendant has an interest in property that is subject to forfeiture in accordance with the applicable statute."  Fed. R. Crim. P. 7(c)(2); *see also* Fed. R. Crim. P. 32.2(1) ("A court must

not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute."). Additionally, a defendant, "in a case in which a jury returns a verdict of guilty," has a statutory right to have the jury "determine whether the government has established the requisite nexus between the property and the offense committed by the defendant." Fed. R. Crim. P. 32.2(b)(4); *Libretti v. United States*, 516 U.S. 29 (1995). Restitution, however, has no comparable requirements. *See generally* 18 U.S.C. § 3664(c) (discussing the procedures required for the issuance of an order of restitution).

*United States v. Webber*, 536 F.3d 584, 602-603 (7th Cir. 2008) (some citations omitted). We agree.[2] The government may rely on 5 U.S.C. § 8148 and 20 C.F.R. § 10.529 in a civil forfeiture proceeding to recover the entire amount at issue. It also could have sought a forfeiture order as part of the criminal prosecution by giving notice of its intent to do so in the indictment. *See* 28 U.S.C. § 2461(c); Fed. R. Crim. P. 32.2; *Webber*, 536 F.3d at 604-05. But the district court may not include in its calculation of a restitution award the worker's compensation payments to which Boring was legitimately entitled, since those do not constitute losses to the victim and thus are not properly the subject of restitution. Therefore, we reverse the restitution award and remand for recalculation.

It follows from this decision that after the district court recalculates the actual loss to the government, it will also need to revisit the loss figure that underlay its calculation of the advisory sentence under the Guidelines. *See* U.S.S.G. § 2B1.1(b).

### III. Conclusion

For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

---

[2]Although we recognize that the Fifth Circuit reached a contrary conclusion in *United States v. Harms*, 442 F.3d 367 (5th Cir. 2006) (affirming a restitution award equal to all benefits received, pursuant to 20 C.F.R. § 10.529), we believe that the Seventh Circuit persuasively explained why *Harms* was mistaken. *See Webber*, 536 F.3d at 603-604.