**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0459n.06

No. 07-1945

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 01, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **CURTIS ELLISON**, also known as Chauncey | ) | **O P I N I O N** |
| Copeland and Curtis Smith, | ) | |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE:    KEITH, COLE, and WHITE, Circuit Judges.

**COLE, Circuit Judge.** Curtis Ellison pleaded guilty to one count of conspiracy to launder monetary instruments under 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(a)(1)(B)(ii), and 1956(h). Following an evidentiary hearing to determine the amount of money Ellison laundered, the district court sentenced him to 137 months' imprisonment. On appeal, Ellison seeks resentencing, claiming that he was entitled to a reduction in his base offense level for acceptance of responsibility under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") and that the district court erred in enhancing his sentence for obstruction of justice. He also seeks resentencing based on claims that he did not receive the revised version of his Presentence Investigation Report ("PSR") sufficiently in advance of his sentencing hearing and that the court deprived him of his right to allocute. For the following reasons, we **AFFIRM** Ellison's sentence.

## I. BACKGROUND

Ellison was charged with one count of conspiracy to deliver marijuana, two counts of conspiracy to launder monetary instruments, and one count of forfeiture. He pleaded guilty to one count of conspiracy to launder monetary instruments. At his plea hearing, Ellison admitted to leasing automobiles using money obtained from the sale of illegal drugs. In exchange for his guilty plea, the Government agreed to dismiss the remaining counts against Ellison, and the parties entered into a plea agreement under Rule 11 of the Federal Rules of Criminal Procedure. The agreement specified a Guidelines range of seventy to eighty-seven months. The Guidelines worksheet attached to the plea agreement stated that the money-laundering conspiracy "involv[ed] more than $70,000" (Joint Appendix ("JA") 99), and both parties agreed to the calculations set forth in the worksheet.

After Ellison received his initial PSR, however, he filed objections to its statements about the amount of funds he had laundered. He pointed out that in his plea colloquy he had not admitted to laundering over $70,000—rather, he merely stated that he used laundered funds to lease cars valued at over $70,000. Ellison argued that the $70,000 figure was not the relevant figure for purposes of his Guidelines calculation and that he had actually paid much less to lease the cars. Because Ellison challenged the Guidelines calculation set forth in the plea agreement, the Government moved to withdraw from the agreement, and the district court granted the motion.

Despite the Government's withdrawal from the plea agreement, the parties decided that Ellison would continue to plead guilty to one count of money-laundering, the Government would still agree to dismiss the other charges, and the district court would hold an evidentiary hearing to determine the amount of money laundered. At the hearing, Ellison testified that he had only paid

$9700 to lease cars, but the Government contended that he had paid between $30,000 and $50,000 for cars and had also laundered money obtained from drug sales by using it to purchase additional drugs, resulting in a total amount laundered of more than $70,000. The district court ruled that, as a matter of law, the use of drug proceeds to purchase additional drugs and to promote the unlawful activity of selling drugs constitutes money-laundering—a ruling that Ellison does not challenge on appeal.

The Government presented testimony from three main witnesses at the evidentiary hearing: Annette and Emory Matthews and Jimmy Gray. Mr. and Mrs. Matthews, a husband and wife who owned and operated the company that leased cars to Ellison, testified to the amount of money Ellison had paid them. Both Matthewses had criminal records that called their credibility into question. Mr. Matthews testified that Ellison had made payments totaling about $31,200. Mrs. Matthews testified that she had directly received payments from Ellison totaling between $8000 and $10,000. The $31,200 figure may include some or all of the $8000 to $10,000 paid to Mrs. Matthews, although the record is less than clear on this point. Both Mr. and Mrs. Matthews testified about an occasion when Ellison came to their office in the evening with several other men, demanded a car, and threatened to harm them if they refused his request, stating that he was entitled to a car because he had paid them $50,000 to lease vehicles in the past. Ellison also testified at the hearing, denying having made these statements to the Matthewses and stating that he had only made two payments to them, for a total of $9700.

In support of its contention that Ellison laundered money by using the proceeds of drug sales to purchase more drugs, the Government presented the testimony of Jimmy Gray, who regularly

transported drugs for one of Ellison's co-defendants, Eric Woodley. Gray testified that he twice

observed Ellison come to Woodley's house to obtain in excess of twenty pounds of marijuana.

According to Gray, Woodley was generally selling the marijuana for $1100 per pound. Gray also

testified that Ellison once brought a bag containing $20,000 in cash to Woodley's house as payment

for heroin that had been fronted to him by an individual named Dada, and that Dada later came and

picked up the money.[1]

Based on the testimony at the evidentiary hearing, the court determined that Ellison had

laundered in excess of $70,000—this figure was important because laundering more than $70,000

results in an addition of eight points to a defendant's base offense level under U.S.S.G. §

2S1.1(a)(2). Specifically, the district court "credit[ed] Defendant's admission to both Mr. and Mrs.

Matthews that he paid $50,000 for automobiles" and concluded that "if the Court credits Defendant

with having picked up only one shipment of 20 pounds [of marijuana], assuming it had a street value

of $1,100 per pound, this marijuana had a value of $22,000." (1/31/07 Order, JA 150, 152).

At Ellison's initial sentencing hearing, the Government raised a new argument based on the

court's findings with respect to the amount laundered, claiming that Ellison had committed perjury

and was no longer entitled to a reduction in his offense level for acceptance of responsibility, but

rather was subject to a two-point increase for obstruction of justice. The Government alleged that

---

[1]The district court appears to have misinterpreted Gray's testimony and concluded that Dada did not accept the payment of $20,000 from Ellison. (*See* 1/31/07 Order at 10.) On the contrary, Gray testified on direct examination: "I remember one occasion [Ellison] came over with a bag which was said to be $20,000 for Dada and Dada coming to pick it up." (JA 273.) On cross-examination, Gray testified that he "saw [Ellison] come over with a grocery bag full of money. [Woodley] told him to set it down on the steps and came back [sic] and he left and then Dada came in and picked up the bag of money." (JA 296.)

Ellison lied about the amount he paid to lease cars and falsely denied engaging in drug transactions. Ellison's counsel requested and received additional time to submit a revised sentencing memorandum responding to the Government's perjury argument. Ellison submitted a memorandum and a supplemental memorandum responding to that argument.

In a draft opinion and order, the district court adopted the Government's position on acceptance of responsibility and obstruction of justice and determined that Ellison's Guidelines range was 110 to 137 months. The court provided the parties with a copy of its draft decision at sentencing, which purportedly surprised Ellison's counsel, who had been expecting to present oral argument on those issues at the sentencing hearing. After hearing Ellison's allocution and argument from counsel, the court sentenced Ellison to 137 months' imprisonment. The following day, July 27, 2007, the district court issued its opinion and order setting forth the sentence. Ellison timely appealed.

## II. ANALYSIS

**A.    The district court did not err in imposing an enhancement for obstruction of justice and denying a reduction for acceptance of responsibility**

*1. Obstruction of justice*

Section 3C1.1 of the Guidelines, in relevant part, instructs the district court to increase a defendant's offense level by two points if the defendant willingly attempted to obstruct the administration of justice during the course of sentencing, and the conduct related to the defendant's offense of conviction. U.S.S.G. § 3C1.1. Perjury is a proper basis for this enhancement. *See id*. cmt. n.4(b). We review a district court's factual determinations underlying an obstruction-of-justice

enhancement for clear error. *See United States v. Goosby*, 523 F.3d 632, 639 (6th Cir. 2008). We review de novo the district court's determination that certain conduct constitutes an obstruction of justice, which is a mixed question of law and fact, and we also review de novo the "actual imposition of the enhancement." *See United States v. Baggett*, 342 F.3d 536, 540-41 (6th Cir. 2003).

"Perjury occurs when a witness, testifying under oath or affirmation, 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *See United States v. Lawrence*, 308 F.3d 623, 631-32 (6th Cir. 2002) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). The offense of perjury has three elements: 1) a false statement under oath, 2) concerning a material matter, 3) with the willful intent to provide false testimony. *See Dunnigan*, 507 U.S. at 94. A sentencing court imposing an obstruction-of-justice enhancement based on its determination that a defendant committed perjury must make specific findings on the record to aid the appellate court in reviewing that decision. *Lawrence*, 308 F.3d at 632. "The [district] court must: 1) identify those particular portions of defendant's testimony that it considers to be perjurious; and 2) either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury." *Id*.

The district court followed the required procedure in its opinion and order and specified two instances of perjury to support its obstruction-of-justice enhancement: 1) Ellison's denial that he paid more than $9700 to lease cars, and 2) his denial that he was involved with drug sales. The court also made a specific finding that each element of perjury was present with respect to both instances. The court determined that Ellison's denials were lies because both allegations were supported by

"Defendant's own plea colloquy" and "evidence from Government's witnesses whom the Court found more credible than Mr. Ellison." (JA 65-66.) While we take exception to one aspect of the district court's reasoning, its ultimate decision was sound because Ellison's testimony was directly, materially contradicted by Government witnesses whom the court reasonably found to be more credible than Ellison.

At his plea hearing, Ellison merely stated that the cars he leased were worth over $70,000—no one asked him how much he paid to lease them. Therefore, it cannot be said that his later claim that he paid only $9700 to lease cars was inconsistent with his plea colloquy, and the basis for the district court's conclusion that Ellison's statements at his plea hearing support a finding of perjury is unclear. Nor did Ellison state at his plea hearing that he had engaged in any drug transactions. The only potential inconsistency between his plea colloquy and his later testimony at the evidentiary hearing related to whether Ellison made lease payments in his own name to obtain cars for other individuals (drug dealers) who wished to remain anonymous. At the plea hearing, Ellison stated that he "leased vehicles from a car broker for various other people," and in response to a question from the prosecutor, he agreed that "the cars [were not] leased in the names of the individuals who provided [him] the drug proceeds," and that the "purpose of that was so that those individuals' identities would not be associated with the cars." (JA 209-10.) While this admission suggests that Ellison must have made numerous payments, rather than just the two to which he later admitted, the district court never articulated this reasoning. In addition, it is possible that Ellison's statements about protecting identities related not to his own efforts, but to the Matthewses' dubious arrangement of leasing cars from dealerships under one name and then leasing them to other

individuals for cash—an arrangement intended to hide the identities of certain people involved, as explained at the evidentiary hearing.

Even if the district court did not have a reasoned basis for stating that disparities between Ellison's plea hearing testimony and evidentiary hearing testimony support a finding of perjury, the district court is correct that the testimony of Emory Matthews (with respect to the leasing of the cars) and Gray (with respect to drugs) clearly contradicted Ellison's testimony. At the evidentiary hearing, Ellison repeatedly denied dealing drugs with or through his co-conspirators, admitting only that he had been aware that his co-defendants, whom he described as friends, were drug dealers. However, Gray testified that Ellison was personally involved in multiple drug transactions: he saw Ellison bring a bag of cash to Woodley's house, which Woodley said was a $20,000 payment to Dada for heroin, and he saw Ellison come to Woodley's house with the purpose of picking up more than twenty pounds of marijuana on two occasions. While Gray's testimony was not particularly strong evidence—Gray was a criminal who did not know Ellison well, had never seen him actually sell drugs, and did not know what type of payment arrangement existed between Ellison and Woodley, if any—it provided the district court with a reasonable factual basis for concluding that Ellison was lying about never engaging in drug transactions. We must afford the district court's credibility determinations great deference, and if two permissible views of the evidence exist, the district court's decision as to which is correct is not clear error. *See United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008); *United States v. Maliszewski*, 161 F.3d 992, 1020 (6th Cir. 1998) (describing the district court's credibility findings, in the context of an obstruction-of-justice enhancement for perjury, as "basically unassailable"). Thus, we conclude that the district court's determination that

Ellison lied about engaging in drug transactions was not clearly erroneous, and we affirm the district court's obstruction-of-justice enhancement on this basis.

In addition, the district court found that Ellison perjured himself by "continuously den[ying] ever . . . paying in excess of $9,700.00 for leased cars." (JA 66.) The district court noted that both of the Matthewses testified that Ellison came to their business and told them that he had paid them $50,000 and was entitled to a car, and the court concluded that Ellison had, in fact, paid this amount. This conclusion is rather weak, given that the Matthewses, who would best know the amount paid to them, testified at the evidentiary hearing that Ellison only paid $31,200. Nonetheless, Emory Matthews did clearly testify that Ellison paid $31,200 for cars, and even if Ellison did not actually pay the $50,000 he claimed to have paid when demanding a car from the Matthewses, his statement supports the conclusion that he paid much more than the $9700 he claimed at the evidentiary hearing. Therefore, the judge's ultimate conclusion that Ellison materially understated the amount of money he paid is supported by the record, and this finding is also an acceptable basis for the district court's imposition of the sentencing enhancement.[2]

Ellison argues that he did not commit perjury but was simply confused by the fact that he was being questioned about drug transactions at a hearing that he expected would deal solely with payments for cars. He points out that inaccurate testimony resulting from confusion, mistake, or faulty memory does not necessarily reflect a willful attempt to obstruct justice. *See* U.S.S.G. § 3C1.1

---

[2]We note that even if Ellison were only deemed to have laundered $31,200 by leasing cars, Gray's testimony still brings him well over the $70,000 threshold. For example, if each pick-up of more than twenty pounds of marijuana implied a purchase of $22,000—a calculation by the district court that Ellison has not challenged—then the two pick-ups take Ellison over the threshold even without considering the bag of $20,000 in cash.

cmt. n.2. Nonetheless, the question of whether one has engaged in large-scale drug sales is not a complicated one, and Ellison does not explain how confusion or a faulty memory, rather than a willful intent to deceive, could be responsible for his denial of drug-dealing. Nor does Ellison offer any reason to believe that the disparity between $9700 and $31,200—a difference of more than 300%—could be explained by mere confusion, mistake, or faulty memory.

The other elements of perjury were also met. Ellison's false statements were material to his sentencing because the perjured testimony, if believed, would have taken Ellison's conduct below the $70,000 threshold, significantly reducing his Guidelines score. *See, e.g.*, *United States v. Boothes*, No. 99-5224, 2000 U.S. App. LEXIS 22737, at *8-9, *15 (6th Cir. Sept. 6, 2000) (upholding finding that testimony was material where, if believed, testimony would have allowed defendant to avoid a sentencing enhancement). The district court also reasonably found that Ellison's provision of false testimony was willful and intentional, both with respect to his denial of purchasing drugs and his gross understatement of the amount of money he paid the Matthewses. Therefore, we affirm the district court's enhancement for obstruction of justice.

    *2.    Acceptance of responsibility*

Section 3E1.1(a) of the Guidelines states: "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." U.S.S.G. § 3E1.1(a). Subsection (b) provides for an additional one-level decrease upon motion of the government. U.S.S.G. § 3E1.1(b). An application note to the section indicates that "a defendant who falsely denies . . . relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1 cmt n.1(a). Furthermore, a proper finding of

obstruction of justice "ordinarily indicates that the defendant has not accepted responsibility." *Id*. cmt. n.4. We review the district court's decision to award or deny a reduction for acceptance of responsibility for clear error. *See United States v. Angel*, 355 F.3d 462, 476 (6th Cir. 2004). For the reasons stated in the preceding section, we conclude that the district court did not clearly err in determining that Ellison committed perjury such that he was not entitled to a reduction for acceptance of responsibility.

**B.      Ellison was not prejudiced by the late provision of the amended PSR**

Ellison appeared for his second sentencing hearing on July 26, 2007, and ten to fifteen minutes before the hearing began he received a revised PSR that had been updated from the prior version to reflect the probation department's new positions on acceptance of responsibility and obstruction of justice (as well as the fact that the Rule 11 agreement had been withdrawn). Ellison had previously received an initial PSR dated September 20, 2006, which was amended on October 23, 2006 and November 13, 2006. Ellison does not contend that he did not receive the October and November amendments. There was no difference between the November 2006 PSR and the July 2007 PSR other than the changes with respect to acceptance of responsibility, obstruction of justice, and the withdrawal of the plea agreement.

Ellison claims that his last-minute receipt of the PSR violated Rule 32(e) of the Federal Rules of Criminal Procedure, which requires the responsible probation officer to provide the PSR to all parties "at least 35 days before sentencing unless the defendant waives this minimum period." Fed. R. Crim. P. 32(e). Ellison did not object to the timeliness of the provision of the amended PSR, so we review the issue for plain error. Among the showings Ellison must make to establish plain error

is that the error affected his substantial rights and "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (quotation marks omitted). Ellison cannot make this showing because he clearly suffered no prejudice as a result of the timing of his receipt of the amended PSR. The only prejudice Ellison alleges is the inability to "file additional written objections to the contested changes in the sentencing guidelines, that being the deletion of the acceptance of responsibility points and the addition of the obstruction of justice points." (Ellison Br. 24.) However, Ellison had long been aware of these proposed changes, had requested and received additional time to brief these very issues, and had submitted two memoranda arguing against the positions adopted in the revised PSR. Therefore, Ellison is not entitled to resentencing based upon the timing of his receipt of the amended PSR.

## C.     Ellison's right to allocute was not violated

The district judge invited Ellison to allocute, which Ellison did without limitation. Ellison's real complaint is that the district court made its decision on the acceptance-of-responsibility and obstruction-of-justice issues based on the parties' written submissions without first allowing counsel to provide oral argument on those issues. We review de novo an allegation of a denial of the right of allocution. *See United States v. Wolfe*, 71 F.3d 611, 614 (6th Cir. 1995). Here, the district court did not err, as "neither the right to allocution in Fed. R. Crim. P. 32(c)(3)(B)&(C), nor the procedures for dealing with controverted matters in Fed. R. Crim. P. 32(c)(1) indicate[s] that a judge may not state his ruling on objections raised to the PSR, or to other sentencing matters, before the defendant or his counsel is given a chance to speak." *Id.* at 614-15. Therefore, this claim is without merit.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** Ellison's sentence.