RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0269p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DANIEL JACKSON,

*Defendant-Appellant*.

No. 24-6105

─────────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Pikeville.
No. 7:24-cr-00007-1—Danny C. Reeves, District Judge.

Decided and Filed: October 1, 2025

Before: THAPAR, READLER, and HERMANDORFER, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Christopher Bazeley, BAZELEY LAW, Cincinnati, Ohio, for Appellant. Carlton S. Shier, IV, Charles P. Wisdom Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

─────────────────

## OPINION

─────────────────

HERMANDORFER, Circuit Judge. Daniel Jackson went to trial on a charge of possessing methamphetamine and fentanyl with the intent to distribute. At trial, Jackson took the stand and insisted that an officer planted the drugs discovered in his car and near his person. Jackson's story didn't stick; the jury convicted. The district court then sentenced Jackson to 97 months' imprisonment and a term of supervised release. Jackson now challenges two components of his sentence. He first argues that the district court erred by imposing an

obstruction-of-justice enhancement based on its finding that Jackson committed perjury at trial. Jackson also objects to a supervised-release condition permitting searches of his electronic devices. We affirm.

I

The events of this case began one evening near the small eastern-Kentucky community of Royalton. Magoffin County Sheriff's Deputies Eugene Salyer and Neil Watson were driving in the area to serve a warrant. On the way, they encountered a truck and noticed that the vehicle's license plate was covered in spray paint and was not illuminated. The deputies performed a traffic stop. Jackson, the truck's driver, told the deputies that he did not have a license or proof of insurance. The deputies ran Jackson's name through their search system and learned that Jackson did not have a valid license or registration. The deputies arrested Jackson for driving on a suspended license. They then placed Jackson, uncuffed, in the back seat of Deputy Salyer's police cruiser.

The deputies were aware of several anonymous tips alleging Jackson's involvement in the sale of methamphetamine. So they called for a canine unit, led by Deputy Donavon Watson, to conduct a free-air sniff around Jackson's truck. After the canine alerted to the presence of drugs, the three deputies—Salyer, Donavon Watson, and Neil Watson—began a search of the truck.

That search revealed methamphetamine and related paraphernalia. Deputy Salyer located a needle on the floor behind the driver's side seat. Deputy Donavon Watson found a hair-clipper case and flashlight concealed within the dashboard behind the glove compartment. Inside the case were syringes, methamphetamine, marijuana, and a set of digital scales. The flashlight contained a larger quantity of methamphetamine.

After the discovery of the needle and first stash of methamphetamine, a fourth deputy, Tyler Lafferty, arrived on the scene. Deputy Lafferty did not participate in the searches or collect any evidence. He spoke with the other deputies and remained for about ten minutes before departing.

Upon the discovery of drugs in Jackson's truck, Deputy Neil Watson removed Jackson from the cruiser to arrest him for the methamphetamine. Consistent with department practice, Deputy Neil Watson then searched the back seat of the cruiser. He found a small cellophane bag containing fentanyl jammed beneath the seat-belt latch where Jackson had been sitting. Jackson was the only person in the back seat of the cruiser that day. Earlier in the day, Deputy Salyer had searched the back seat and did not see the cellophane bag.

The Government charged Jackson with one count of possessing a mixture or substance containing fentanyl and 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). At trial, the Government introduced into evidence pictures of the recovered drugs, needles, and scales that the deputies took at the scene of the stop. Deputies Salyer, Neil Watson, and Donavon Watson also testified to the above account. The deputies explained that the Magoffin County Sheriff's Department did not equip them with body or dash cameras on the night of Jackson's arrest.

Jackson's defense was straightforward: He insisted that the drugs weren't his. Jackson testified in his own defense and told the jury he had been framed. In Jackson's account, Deputy Lafferty planted the drugs both in Jackson's truck and in the police cruiser. Deputy Lafferty, Jackson contended, had the bag of fentanyl "in his hand when he went in the back seat" of the police cruiser and "put that stuff in the back seat of the car." Day 1 Trial Tr., R. 57, PageID 434, 439. Jackson also maintained that the canine "[r]ear[ed] up on Lafferty and smell[ed] his pocket." *Id.* at PageID 439. Jackson added that Deputy Lafferty "got out of his vehicle and walked straight to the dashboard and never looked nowhere else, and he said he found some stuff in my truck, and I didn't even know it was there." *Id.* at PageID 433. The jury swiftly voted to convict.

Under the U.S. Sentencing Guidelines, a defendant's perjury at trial triggers application of a sentencing enhancement for obstructing justice. *See* U.S. Sent'g Guidelines Manual § 3C1.1 cmt. n.4(B) (U.S. Sent'g Comm'n 2024). At sentencing, the parties disputed whether Jackson's trial testimony qualified as perjury that warranted the obstruction-of-justice enhancement. The district court, for its part, found that Jackson's testimony about the planted drugs was false, willful rather than the result of a mistake, and material to Jackson's "possession of the drugs."

Sentencing Tr., R. 59, PageID 532-33.  Based on its findings, the district court concluded that Jackson had committed perjury and so applied the obstruction-of-justice enhancement.

The district court also imposed a five-year term of supervised release.  Relevant here, one condition of Jackson's supervised release requires him to submit his "computers, other electronic devices, cloud storage locations, and data storage locations to a search conducted by the United States Probation Office."  Judgment, R. 44, PageID 175.  The district court considered this condition "necessary" to "ensure the safety of the probation office" and mitigate what the district court saw as the "particularly" high risk that Jackson would re-offend given his behavior during the proceedings.  Sentencing Tr., R. 59, PageID 556, 560.  Jackson neither objected to the search condition during sentencing nor asked for additional findings when the district court offered to make them.

Jackson timely appealed his sentence.  *See* Fed. R. App. P. 4(b)(1).  We have jurisdiction. *See* 18 U.S.C. § 3742(a); 28 U.S.C. § 1291.

## II

On appeal, Jackson challenges the district court's imposition of the obstruction-of-justice sentencing enhancement as well as the electronic-device condition of his supervised release.  We discuss each set of issues in turn.

## A

We first address the obstruction-of-justice enhancement.  At issue is Section 3C1.1 of the Sentencing Guidelines.  That provision mandates a district court to "increase the offense level by 2 levels" if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to" the "prosecution" of "the instant offense of conviction" and "the obstructive conduct relate[s]" to "the defendant's offense of conviction." U.S.S.G. § 3C1.1.  "According to the guidelines, obstruction of justice includes the commission of perjury."  *United States v. Maliszewski*, 161 F.3d 992, 1030 (6th Cir. 1998) (citation and quotation marks omitted).  Before applying a perjury-based enhancement, district courts must

specify the perjured testimony and make factual findings as to the testimony's falsity, willfulness, and materiality. *See United States v. Roberts*, 919 F.3d 980, 990 (6th Cir. 2019).

The district court imposed the obstruction-of-justice enhancement because it found, by a preponderance of the evidence, that Jackson committed perjury at trial. Jackson does not dispute that a defendant's perjury triggers application of the enhancement. But he argues that his trial testimony reflected only "misperceptions," not the kind of willful lies perjury requires. Jackson Br. 6. And he asserts that approving the enhancement here could chill defendants' decision to testify. Neither line of argument succeeds.

1

Before turning to the merits, we address the appellate standard for reviewing obstruction-of-justice enhancements that involve defendants' perjury at trial.

"All agree" that we review a district court's "legal conclusions" de novo and "fact findings" for "clear error." *United States v. Thomas*, 933 F.3d 605, 608 (6th Cir. 2019) (citation modified). But the parties dispute the proper standard for reviewing application of the obstruction-of-justice enhancement to a particular defendant's conduct. That mixed question of law and fact, as Jackson sees it, requires de novo review. The Government counters that the proper standard is clear error.

Caselaw in this circuit points in different directions. In some decisions, we have cited the de novo standard when reviewing application of the obstruction-of-justice enhancement to the facts. *See, e.g.*, *United States v. Mooney*, 135 F.4th 486, 499 (6th Cir. 2025). In others, we have reviewed the enhancement's application for clear error. *See, e.g.*, *United States v. Jackson-Randolph*, 282 F.3d 369, 390 (6th Cir. 2002). And at times, we "have incorporated *both* standards, noting that courts should review de novo whether facts constitute obstruction of justice, but also should give due deference to the district court's application of the guideline to the facts." *Thomas*, 933 F.3d at 608 (citation and quotation marks omitted).

Meanwhile, the Supreme Court has directed that deferential rather than de novo review applies "when a particular mixed question 'immerse[s] courts in case-specific factual issues.'"

*United States v. Florence*, --- F.4th ----, 2025 WL 2539022, at *5 (6th Cir. Sept. 4, 2025) (quoting *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018)).  District courts have "the closest and the deepest understanding of the record." *U.S. Bank*, 583 U.S. at 398.  Appellate courts are thus ill positioned to second guess decisions based on the "marshal[ing] and weigh[ing]" of the "evidence" or "credibility judgments." *Id.* at 396.  Applying the Supreme Court's instruction, we recently concluded that "fact-bound" sentencing determinations—like application of the maintenance prong of the "drug-premises enhancement"—"warrant[] clear-error review." *Florence*, 2025 WL 2539022, at *6.

As we see it, the clear-error standard likewise governs review of perjury-based obstruction enhancements.  Our conclusion reflects the enhancement's settled application to perjury, the fact-bound nature of the perjury determination, and our approach in prior cases.

Start with the enhancement's settled application to a defendant's perjury at trial.  The Supreme Court has read the obstruction-of-justice provision to mean that "[u]pon a proper determination that the accused has committed perjury at trial, an enhancement of sentence is required by the Sentencing Guidelines." *United States v. Dunnigan*, 507 U.S. 87, 98 (1993). Our cases and the commentary to Section 3C1.1 accord with that understanding of the enhancement's meaning. *See, e.g.*, *United States v. O'Lear*, 90 F.4th 519, 534 (6th Cir. 2024); U.S.S.G. § 3C1.1 cmt. n.4(B).  So as the law stands, applying the obstruction-of-justice enhancement in perjury cases is mechanical:  The enhancement "is mandatory" if a "defendant committed perjury" at trial. *United States v. Camejo*, 333 F.3d 669, 675 (6th Cir. 2003).  Jackson does not dispute as much.

Given that straightforward application to perjury, a district court's perjury determination is what drives the lawfulness of the obstruction enhancement.  The perjury inquiry, in turn, requires assessing "case-specific historical facts." *Florence*, 2025 WL 2539022, at *6 (quoting *U.S. Bank*, 583 U.S. at 397).  It also involves rendering conclusions about demeanor and credibility, which are best done through in-person assessments rather than on a cold paper record. *See United States v. Iossifov*, 45 F.4th 899, 923-24 (6th Cir. 2022); *Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985).  Those considerations implicate the "relative institutional advantages"

of district courts, which means appellate review should be "deferential." *Buford v. United States*, 532 U.S. 59, 64 (2001).

Applying clear-error review also aligns with this Court's standard approach in cases involving perjury-based enhancements. To be sure, our cases sometimes recite the de novo standard for resolving mixed law-fact questions at the outset of review. *See, e.g.*, *United States v. Watkins*, 691 F.3d 841, 851 (6th Cir. 2012). But the substance of our review has not involved applying the enhancement to defendants' perjury because, as discussed, that application follows by definition. Instead, our review in perjury cases has centered on whether the district court observed the required procedures and made the factual findings—as to falsity, willfulness, and materiality—that the defendant committed perjury. If those findings are absent, we have identified clear error and reversed. *See, e.g.*, *Roberts*, 919 F.3d at 990-91; *United States v. Kimberly*, 412 F. App'x 750, 755 (6th Cir. 2011). But if those findings are present, we have applied clear-error review to both the ultimate conclusion that a defendant committed perjury and the underlying factual findings supporting that assessment.[1]

The upshot: When a district court renders the factual findings required to establish perjury, we review those findings only for clear error and can ordinarily affirm application of the obstruction-of-justice enhancement. That framework governs the sentencing challenge here.

2

We now turn to the merits of Jackson's arguments under Section 3C1.1 of the Sentencing Guidelines, which provides for the obstruction-of-justice enhancement.

To impose an obstruction-of-justice sentencing enhancement, the district court must "make independent findings necessary to establish a willful impediment to, or obstruction of, justice." *Dunnigan*, 507 U.S. at 95. As mentioned, perjury-based enhancements come with their own set of rules. Before applying the enhancement based on a defendant's trial testimony, a district court must satisfy two requirements. "[F]irst, it must identify those particular portions of the defendant's testimony that it considers to be perjurious." *Roberts*, 919 F.3d at 990 (quoting

---

[1]*See, e.g.*, *United States v. Collins*, 799 F.3d 554, 593-94 (6th Cir. 2015); *Watkins*, 691 F.3d at 851-52; *Camejo*, 333 F.3d at 675.

*United States v. Sassanelli*, 118 F.3d 495, 501 (6th Cir. 1997)).  And "second, it must either make specific findings for each element of perjury or at least make a finding that encompasses all of the factual predicates for a finding of perjury."  *Id.*  Those perjury predicates are threefold:  The defendant must have given (1) "false testimony" that (2) was "willful" and (3) "concern[ed] a material matter."  *Dunnigan*, 507 U.S. at 94.  To reiterate, we review "for clear error" the "district court's factual determination that [a] defendant testified falsely about material matters— and that he did so intentionally."  *Camejo*, 333 F.3d at 675.

The district court followed these procedures at Jackson's sentencing hearing.  To begin, the district court identified the "particular" testimony that supported the obstruction-of-justice enhancement.  *Roberts*, 919 F.3d at 990.  That testimony comprised Jackson's assertions that Deputy Lafferty "planted fentanyl within the police car," that Deputy Lafferty "went directly to that area of the truck" where the methamphetamine was recovered "as opposed to searching other areas of the truck," and that "the dog alerted to the pocket of" Deputy Lafferty.  Sentencing Tr., R. 59, PageID 532-33.  As the district court noted, the thrust of Jackson's testimony was that the drugs were planted, not his.

Next, the district court rendered findings on "each" of the three perjury elements. *Roberts*, 919 F.3d at 990.  The district court first found that Jackson's testimony was false because it "was directly contradictory to" three deputies' trial testimony about the drug search and recovery.  Sentencing Tr., R. 59, PageID 532.  The district court further determined that Jackson's assertion that "an officer actually planted drugs" was "certainly willful."  *Id.*  In the district court's words, "[t]here's no misunderstanding about what the defendant's position was" on whether "these were his drugs."  *Id.* at 532-33.  Finally, the district court concluded that the testimony was "certainly material" because it was on "a direct issue in the case about his possession of the drugs."  *Id.*

The district court's three-part findings that Jackson committed perjury are not clearly erroneous.  As for falsity, the district court correctly noted that Jackson's testimony contradicted the testimony of "everyone else" in the case.  Sentencing Tr., R. 59, PageID 534; *cf. Maliszewski*, 161 F.3d at 1029-30 (affirming falsity finding based on district court's observation that the testimony was "inconsistent with a wealth of other testimony"); *United States v. Collins*, 799

F.3d 554, 594 (6th Cir. 2015) (similar). And ultimately, the "jury . . . believed" the deputies' account, not Jackson's. *United States v. Boring*, 557 F.3d 707, 712 (6th Cir. 2009). Viewing the "entire evidence," *Anderson*, 470 U.S. at 573 (citation and quotation marks omitted), the district court "was certainly entitled to conclude that" Jackson "lied" by providing "false denials" when he accused the deputies of framing him, *Maliszewski*, 161 F.3d at 1029-30.

Nor are the district court's willfulness and materiality findings clearly erroneous. "[T]he discrepancy between" Jackson's testimony and the deputies' testimony "suggests that, if [Jackson's] testimony was false, it was almost certainly willfully so, rather than the product of a faulty memory." *Boring*, 557 F.3d at 712-13. As the district court put it, there could have been no "misunderstanding" about drugs being planted. Sentencing Tr., R. 59, PageID 532. And Jackson's testimony was material "since it directly concerned" Jackson's possession, which was "one of the elements of the crime." *Boring*, 557 F.3d at 712.

Given its well-supported trio of findings about Jackson's perjury, the district court did not clearly err by imposing the obstruction-of-justice enhancement. *See* U.S.S.G. § 3C1.1. Because Jackson committed perjury, the enhancement "is required by the Sentencing Guidelines." *Dunnigan*, 507 U.S. at 98. For that reason, we have repeatedly affirmed the enhancement in similar circumstances. *See, e.g.*, *Maliszewski*, 161 F.3d at 1029-30; *United States v. Streets*, 401 F. App'x 81, 93-94 (6th Cir. 2010).

Jackson makes two arguments in response. *First*, Jackson contends that any false testimony "can be explained away as misperceptions" induced by things like stress. But the district court did not "quibble" with the details of Jackson's account. Sentencing Tr., R. 59, PageID 532. It homed in on Jackson's core assertion that a deputy framed him. And it remarked that such information could not stem from a mere "misunderstanding." *Id.* Jackson does not plausibly "explain how confusion or a faulty memory, rather than a willful intent to deceive, could be responsible for" testimony about planted drugs. *United States v. Ellison*, 336 F. App'x 483, 488 (6th Cir. 2009). And besides, Jackson's characterization at most amounts to a different reading of the trial record. "Where there are two permissible views of the evidence," however, "the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574.

So Jackson runs aground on the clear-error standard even accepting his "misperceptions" premise.

*Second*, Jackson argues that affirming the district court could chill defendants' ability to defend themselves by testifying at trial. But a "defendant's right to testify does not include a right to commit perjury." *Dunnigan*, 507 U.S. at 96; *accord* U.S.S.G. § 3C1.1 cmt. n.2 (enhancement appropriate for "a denial of guilt under oath that constitutes perjury"). And requiring that district courts "make findings to support all the elements of a perjury violation"— as the district court did here—helps ensure that the enhancement will not "undermine[] the right to testify." *Dunnigan*, 507 U.S. at 96-97. For these reasons, our Court has routinely rejected Jackson's argument against perjury-based obstruction enhancements. *See, e.g.*, *Boring*, 557 F.3d at 713; *United States v. Washington*, 702 F.3d 886, 896 (6th Cir. 2012). We do so again today.

B

Jackson also challenges the district court's explanation for imposing a supervised-release condition relating to his electronic devices. The condition requires Jackson to submit his "computers, other electronic devices, cloud storage locations, and data storage locations to a search conducted by the United States Probation Office." Judgment, R. 44, PageID 175. Jackson did not object to the condition during sentencing. So both sides agree that we review for plain error. Jackson "must show (1) an error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) that affected the fairness, integrity, or public reputation of his judicial proceedings." *United States v. Inman*, 666 F.3d 1001, 1003-04 (6th Cir. 2012). That is a "tall hill" for Jackson "to climb." *United States v. Tellez*, 86 F.4th 1148, 1154 (6th Cir. 2023).

Because the second prong of plain-error review provides a "straightforward way to handle this appeal," we begin and end there. *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc). Contra Jackson, the district court adequately explained why it imposed the challenged search condition: "[T]o ensure the safety of the probation office" and "to ensure that the defendant does not re-engage in drug trafficking activities." Sentencing Tr., R. 59, PageID 560. Recidivism was a particular risk, the district court observed, given Jackson's failure to

accept culpability and his continued choice to "blame others for his own conduct." *Id.* at PageID 556.

The district court's explanation about officer safety and recidivism maps onto permitting the search of Jackson's electronic devices during his supervised-release term. We have upheld broader search conditions imposed to protect probation officers and prevent recidivism. *United States v. Kingsley*, 241 F.3d 828, 837 (6th Cir. 2001). So have other courts of appeals.[2] Jackson identifies no caselaw to the contrary. Jackson's failure to show an error "clearly contrary to the law at the time of appeal" forecloses his argument for vacatur under plain-error review. *Tellez*, 86 F.4th at 1154 (citation and quotation marks omitted).

\*    \*    \*

We affirm the judgment of the district court.

---

[2]*E.g.*, *United States v. Poole*, 133 F.4th 205, 210-11 (2d Cir. 2025); *United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007); *United States v. Hanrahan*, 508 F.3d 962, 971 (10th Cir. 2007).