RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0269p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

            *v.*                                         No. 10-4076

BERNARD K. WATKINS,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:09-cr-490-1—John R. Adams, District Judge.

Decided and Filed: August 17, 2012

Before: MERRITT and COOK, Circuit Judges; and COX, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Jeffrey P. Safford, Cleveland, Ohio, Wendi L. Overmyer, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Akron, Ohio, for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

COOK, J., delivered the opinion of the court, in which COX, D. J., joined and MERRITT, J., joined in part. MERRITT, J. (pp. 16–18), delivered a separate opinion dissenting in part.

_____

## OPINION

_____

COOK, Circuit Judge. Defendant Bernard K. Watkins, an African-American supervisor of security-systems contracts for a school district in Cleveland, Ohio, corruptly solicited and obtained money from a contractor of security cameras. An all-

---

[*] The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by designation.

white jury found him guilty of two counts of attempted extortion "under color of official right" in violation of the Hobbs Act, 18 U.S.C. § 1951,[1] and one count of bribery in a federally funded program in violation of 18 U.S.C. § 666(a)(1)(B).[2] At sentencing, the district court determined a total offense level of 22 after applying (1) a two-level enhancement for obstruction of justice, (2) another two-level enhancement for the bribes exceeding $5,000, and (3) a four-level enhancement for Watkins's high level of decision-making authority. Further, after considering the sentencing factors outlined in 18 U.S.C. § 3553(a), the district court applied an upward variance of 21 months. The district court thus sentenced Watkins to six years' incarceration on each count, to be served concurrently, followed by a three-year term of supervised release. Watkins appeals his conviction and sentence, raising issues relating to the district court's jury instructions, the sufficiency of the evidence, the jury's racial composition, and the reasonableness of the sentence. We affirm.

## I. Factual Background

Watkins worked as the Technical Supervisor for Safety and Security for the Cleveland Metropolitan School District. His duties included overseeing security systems contracts within the School District and ensuring that all security equipment, including closed-circuit security cameras and alarms, functioned properly. Lester Fultz supervised Watkins and served as the School District's Chief of Safety and Security. At trial, Fultz testified that Watkins had significant technical expertise when it came to security equipment and that Watkins helped him to assess the various bids of security camera vendors by compiling a list that summarized the best proposals. Relying on Watkins's advice, Fultz awarded a $182,000 annual contract to Vision Security Solutions ("Vision"), a company then based in Galveston, Texas, for the service and maintenance

---

[1]The Hobbs Act punishes whoever "affects commerce . . . by . . . extortion or attempts or conspires so to do," and defines "extortion" as "obtaining . . . property from another, with his consent . . . under color of official right." 18 U.S.C. § 1951(a), (b)(2).

[2]The bribery statute criminalizes the act where, "[w]hoever . . . being an agent of . . . a State [or] local . . . government . . . corruptly solicits or demands . . . or accepts . . . anything of value from any person, intending to be influenced or rewarded in connection with any . . . transaction . . . involving any thing of value of $5,000 or more " when the "government . . . receives, in any one year period, benefits in excess of $10,000 under a Federal program." 18 U.S.C. § 666(a)(1)(B), (b).

of the School District's security cameras. Watkins, who was already professionally acquainted with Vision's president and owner, Victoria Newsome, became the point person for the contract. Newsome testified that Watkins called her shortly after she received the news, congratulated her, and then stated that "it is customary for the person who brought you the contract to get a finder's fee of two to five percent." Newsome interpreted Watkins's comment to mean that he was asking her for a kickback. Newsome further testified that Watkins called her again after Vision received its first payment from the School District, made the same request, and indicated that Newsome needed "someone on the inside," which Newsome construed as a veiled threat—i.e., a threat that Watkins would sabotage the contract if she declined to pay him.

In late August 2008, Newsome scheduled a trip to Cleveland for a standard customer visit with Watkins. She e-mailed him her travel itinerary and received a one-word reply: "Absolutely$." The inclusion of the dollar sign signaled to Newsome that Watkins expected her to pay him at their meeting. Troubled, Newsome wrote an e-mail to Fultz that included her correspondence with Watkins and stated, "I am concerned about possible improprieties that I need to discuss with you." Newsome thereafter met with Watkins in his office on August 28. She testified that, toward the end of this meeting, she asked Watkins if there was anything else she could do to keep him happy as a customer. Watkins replied, "An envelope."

Newsome spoke with Fultz that evening and recounted to him the details of her interactions with Watkins. Fultz contacted the Cleveland Police Department, and the police contacted the Cleveland office of the FBI. The FBI then spoke with Newsome, who agreed to record her future discussions with Watkins. The first recorded meeting occurred on October 28. Prior to it, the FBI furnished Newsome with $5,000 in cash to give to Watkins. Newsome enclosed the money in an envelope and gave it to Watkins at the meeting, indicating that "5,000 thank-you's" were inside. Watkins responded by exclaiming that he was "happy" and that he "trust[ed]" Newsome. Toward the end of the meeting, Watkins told Newsome, "Cause I'm happy, you know, customers get unhappy then they start to nitpick the contract and make you jump through hoops and

all that." He also stated that "nothing happens anymore unless somebody is scratching somebody's back." Newsome testified that she viewed these comments as demands for additional payment.

The second recorded meeting occurred on December 18. The FBI once again supplied Newsome with money (a lesser sum of $2,000) to give to Watkins. This time, Newsome enclosed the cash in a Christmas card and explained to Watkins that "Christmas is not as happy as [she] would like for it to be" to indicate that the amount was less than the two-to-five percent kickback that Watkins had requested. Newsome then asked Watkins, "Is there something we can do on these proposals or quotes to make the holidays more festive[?]" Watkins responded, "[A]bsolutely." Newsome testified that she viewed Watkins's reply as a request for her to pad Vision Security Solution's invoices so that she could provide him with additional money.

In late January 2009, FBI Special Agents Thomas Levy and Erin Dulaney interviewed Watkins and played him excerpts from the recorded meetings. Watkins became visibly upset and attempted to explain why he had accepted the money, first characterizing it as a "finder's fee" for providing Newsome with potential business opportunities and then as a gift. Special Agent Erin Dulaney told Watkins that, gift or otherwise, it was illegal for him to accept money from a contractor that was working for the School District. Watkins's candid response was "[i]t looks bad for me; I'm f***ed" and "[y]ou got me."

Watkins testified at trial. Again, he denied ever soliciting the money and continuously characterized both payments as unanticipated compensation for a list of local business contacts that he had agreed to provide to Newsome during their August 28 meeting. He was unable to provide a record of any of these referrals. He characterized the dollar sign in his e-mail to Newsome as a typographical error and his colorful statements to the FBI as admissions not of bribery or extortion but of lawful conduct that his job nonetheless prohibited. Finally, he pointed out that he had willingly cooperated with the FBI in its efforts to ferret out corruption within the School District by providing the names of employees that he thought might have pertinent knowledge.

The jury nevertheless returned guilty verdicts on the three counts, and the district court's sentencing hearing followed.  Watkins appeals both his conviction and sentence.

## II.  Discussion

A.  Challenge to Hobbs Act Jury Instruction and Related Statements of Law

Watkins asserts that the district court failed to properly instruct the jury on an essential element of the crime of extortion "under color of official right" and compounded its error by permitting the government to introduce misstatements of law through lay testimony and its closing argument.  We review disputes regarding jury instructions de novo and a trial court's refusal to provide a requested instruction for abuse of discretion.  *See United States  v. Gunter*, 551 F.3d 472, 484 (6th Cir. 2009).

Citing *United States v. Abbey*, 560 F.3d 513 (6th Cir. 2009), Watkins argues that, to sustain a conviction under the Hobbs Act, the government needed to prove that he accepted the payments knowing that they were made in exchange for his official acts within the School District.  He accurately points out that this *quid pro quo* language was absent from the district court's jury instruction on the definition of "under color of official right."[3]  *Abbey* makes clear, however, that the *quid pro quo* element of an extortion claim can be implied and that "[a] public official . . . commits extortion 'under color of official right' whenever he knowingly receives a bribe."  *Id.* at 518. We conclude that the jury instructions in this case, when viewed in their entirety, adequately conveyed the necessity of finding that Watkins's actions were knowing and deliberate rather than the result of a mistake or mere inadvertence.  *See United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005) ("When jury instructions are claimed to

---

[3]The district court instructed the jury on the definition of "under color of official right" as follows:

> The term "under color of official right" means the use by a public official or employee of the power and authority of the office he occupies in order to obtain money, property, or something of value from another to which that government official or employee, or that government office, has no official right. It is not necessary for the government to prove that the public official or employee made any specific threat or used force or fear to cause a person to part with the property that the indictment alleges was obtained by the public official or that the—or that the employee—excuse me, or that employee or government office. The government must prove beyond a reasonable doubt, however, that the defendant obtained a payment to which he had no right.

be erroneous, we review the instructions as a whole, in order to determine whether they adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." (citing *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000))).

Just prior to instructing the jury on the elements of extortion "under color of official right," the district court outlined the broader contours of the offense and accurately explained that Watkins was charged with two counts of

> knowingly attempt[ing] to obstruct, delay, and affect in any way and degree interstate commerce and the movement of articles and commodities in interstate commerce by extortion; that is, Bernard K. Watkins obtained property . . . not due him, from a representative of Vision, with the consent of a representative of Vision, under color of official right.

The district court thereafter told the jury, "The defendant need not have intended or anticipated an [e]ffect on interstate commerce. You may find the [e]ffect is a natural consequence of his actions." In doing so, the district court clarified that the intent element of the offense applied to Watkins's reason for accepting the payments, i.e., it required him to understand why he was receiving the money but did not require him to intend any interstate commercial impacts flowing from the transaction. The district court thus adequately communicated to the jury that Watkins committed extortion "under color of official right" only if he knowingly accepted a bribe. *See Abbey*, 560 F.3d at 518.

We also reject Watkins's contention that the district court permitted misstatements of law to go unchecked. In support of his argument, Watkins points to the testimony of Special Agent Dulaney, who testified that she "told [Watkins] that even if it were a gift, it would be illegal for him to accept money from a vendor doing business with the school district" and that Watkins responded with the following: "I'm f***ed" and "You got me." If admitted for its truth, so argues Watkins, this testimony would have inaccurately conveyed the impression that a public official violates the law simply by accepting something of value from a contractor working for the state. During a side-bar discussion with counsel, however, the district court explained that it was only

admitting the testimony as evidence of Watkins's guilty state of mind.  Additionally, during defense counsel's cross-examination of Special Agent Dulaney, the district court provided the following curative instruction to the jury that clarified the testimony's limited purpose and mitigated any confusion or other adverse impact:

> Ladies and gentlemen, let me interject at this point.  I allowed the witness to testify as to what she said to Mr. Watkins.  As to whether or not that conduct is a violation of the law will ultimately be decided by you after you hear all the evidence in this case and hear my instructions of law.[4]

Similarly unpersuasive is Watkins's assertion that the government engaged in prosecutorial misconduct by making comparable misstatements of law during its closing argument.  Because defense counsel did not object at trial to the government's closing argument, we review only for plain error.  Given the context of Watkins's trial, we conclude that the allegedly improper remarks were not flagrant and do not warrant reversal when they are considered in the context of Watkins's entire trial.  *See United States v. Sills*, 662 F.3d 415, 417–18 (6th Cir. 2011); *United States v. Boyd*, 640 F.3d 657, 669 (6th Cir. 2011) ("We afford wide latitude to a prosecutor during closing argument, analyzing the disputed comments in the context of the trial as a whole and recognizing that inappropriate comments alone do not justify reversal where the proceedings were otherwise fair."  (internal quotation marks omitted)).  Contrary to Watkins's assertions, the jury was adequately instructed on the elements of the extortion and bribery offenses and was capable of evaluating the prosecution's concluding statements within an accurate legal framework.  Further, as we will discuss, the evidence against Watkins was powerful.  *See Boyd*, 640 F.3d at 669 (discussing factors involved in evaluating allegations of prosecutorial misconduct, including the degree to which the conduct or remarks tended to mislead the jury and the overall strength of the evidence

---

[4]Special Agent Levy testified subsequently.  The district court overruled defense counsel's objection to those portions of his testimony that described the discussion between Watkins and Special Agent Dulaney and did not reissue its prior limiting instruction.  A criminal defendant, however, is entitled to "a fair trial, not a perfect one."  *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).  The district court properly instructed the jury in the first instance to refrain from drawing any legal conclusions from the discussion between Watkins and Special Agent Dulaney until it had heard all of the evidence and additional instructions on the law.  The absence of an additional instruction limiting the testimony of Special Agent Levy on this same topic did not affect the overall fairness of the proceedings.

against the defendant).  Any error in this case was therefore not so plain "that the trial judge and prosecutor were derelict in countenancing it."  *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008) (quoting *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001)).

B.  Sufficiency of the Evidence

Next, Watkins sets forth a three-part challenge to the sufficiency of the evidence underpinning his convictions for extortion under color of official right and bribery in a federally funded program.  "[A]fter viewing the evidence in the light most favorable to the prosecution," we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

First, Watkins asserts that the government failed to satisfy the jurisdictional nexus of the Hobbs Act because the FBI supplied the bribe money.  *See United States v. DiCarlantonio*, 870 F.2d 1058, 1060–61 (6th Cir. 1989) (holding that receipt of FBI-supplied money fails to create the de minimis effect on interstate commerce that Hobbs Act requires).  But *DiCarlantonio* also expressly stated that the use of FBI funds "erects no barrier to attempt charges."  *See id.* at 1061.  Throughout the proceedings, the government and the court anchored the charges underlying Watkins's extortion on attempt.  The extortion counts in the superseding indictment, though labeled "Extortion Under Color of Official Right," charge only that Watkins knowingly "attempt[ed]" to extort in a way that affects interstate commerce.  The court, in addition to reading the "attempt" language in the charges verbatim, explained that Watkins's conduct must have either "affected" or "*would have* affected, or had the potential to affect interstate commerce."  And the verdict form reflects that the jury found Watkins guilty beyond a reasonable doubt of extortion "as charged in [the counts in the indictment]"—that is, as an attempt.

Furthermore, sufficient evidence existed to establish a "realistic probability" that Watkins's attempts at extortion would have affected interstate commerce.  *See United States v. Peete*, 919 F.2d 1168, 1175 (6th Cir. 1990) ("[The *de minimis* effect on

interstate commerce] requirement, especially in cases of attempts, has been read broadly to allow purely intrastate activity to be regulated under the theory that there was a *realistic probability* that the activity would have affected interstate commerce."). The government presented evidence that the School District contracted with Vision, an out-of-state vendor which, in turn, purchases materials from vendors in other states; that Watkins claimed to have the power to affect this contract and to propose vendors; and that Newsome traveled across states in order to fulfill Watkins's intimations that he wanted kickbacks. A rational trier of fact could conclude from the available evidence that Watkins's scheme probably would have affected interstate commerce in at least a de minimis fashion had Newsome refused or acquiesced to his extortion attempts rather than cooperating with the authorities. *See United States v. Brown*, 959 F.2d 63, 68 (6th Cir. 1992) (concluding that government met jurisdictional requirement where a realistic probability existed that defendant, if successful, would have affected out-of-state purchases).

Second, Watkins contends that the government did not prove the *quid pro quo* element of the crime of extortion "under color of official right," namely, that he knowingly accepted the money in return for his official acts. He claims that he "understood the money to be a retainer for future consulting work" and supports his argument by pointing out that the contract between Vision and the School District was already in existence when he received the money from Newsome and that the contract was "never actually delayed or hindered in any way." But Watkins retained power over how the contract was administered and indicated to Newsome that he could "start to nitpick the contract and make [her] jump through hoops." A reasonable jury could infer from the facts that Watkins threatened to create problems with the contract if Newsome refused to pay. The verdict demonstrated that the jurors did not believe Watkins's testimony that the money was for independent consulting work, and this court "may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005) (citing *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)).

Third, Watkins contends that the government also presented insufficient evidence to support his conviction for bribery in a federally funded program. He does not deny accepting $7,000 from Newsome. He emphasizes, however, that some of Newsome's testimony was uncorroborated and characterizes the evidence on the videotapes as equally consistent with his description of the money as a "finder's fee" for unrelated consulting work because he was at no point recorded actively soliciting a bribe or referring to the money as a kickback. But for the reasons just stated, the videotaped evidence against Watkins was incriminating and justified the jury's verdict. Further, the jury could credit the uncorroborated portions of Newsome's testimony describing how Watkins solicited the kickbacks over Watkins's alternative explanation for why he accepted the money.

## C. Sixth Amendment Claim

We review de novo the issue whether the jury venire represented a "fair cross-section of the community." *United States v. Odeneal*, 517 F.3d 406, 412 (6th Cir. 2008). Watkins claims that the Jury Selection Plan for the Northern District of Ohio violates the Sixth Amendment by systematically excluding minorities. Specifically, he argues that the practice of summoning jurors using voter registration lists exclusively, rather than also drawing from driver's-license and state-identification lists, disfavors minorities, who tend to vote in lower proportions than other groups. But we specifically rejected this argument in *Odeneal*. *Id.* Nor does a fair cross-section require, as Watkins argues next, that the Jury Selection Plan proportionally represent in each venire the weighted average of the percentage of minorities in each of the seven counties in the district. *See Taylor v. Louisiana*, 419 U.S. 522, 538 (1975) (requiring only that the venires and name pools must not systematically exclude distinctive groups in the community, and specifically refusing to establish more detailed jury-selection procedures). The failure to ensure strict county proportionality is not tantamount to "the systematic exclusion of [minority groups] in the jury-selection process" and does not violate the Sixth Amendment, as the residents of a particular county are not a "'distinctive' group in the community" for Sixth Amendment purposes. *See Duren v. Missouri*, 439 U.S. 357, 364

(1979) (requiring prima facie showing of systematic exclusion of a distinctive group in order to show a violation of fair-cross-section requirement); *United States v. Conant*, 116 F. Supp. 2d 1015, 1024 (E.D. Wis. 2000) ("[E]very court that has looked at the question of whether the residents of a geographic area may constitute a 'distinctive' group . . . solely due to the location of their residence has answered negatively."). Watkins's Sixth Amendment claim thus fails.

D.  Sentencing Challenges

Watkins challenges his sentence on appeal by asserting that the district court miscalculated the advisory guidelines range when it applied (1) a two-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, and (2) a four-level enhancement based on his high-level position within the School District, pursuant to U.S.S.G. § 2C1.1(b)(3).  He also attacks the 21-month upward variance.

According to Watkins, the district court improperly applied a two-level obstruction of justice enhancement after determining that "it was abundantly clear that Watkins committed perjury" at trial by continuously referring to the money that he received from Newsome as a "finder's fee" for independent consulting work. We review the district court's factual findings for clear error and its determination that Watkins's conduct constituted obstruction of justice—as well its application of the two-level enhancement—de novo. *United States v. Camejo*, 333 F.3d 669, 674–75 (6th Cir. 2003) (explaining that an "offense level enhancement for obstruction of justice is subject to a trifurcated standard of review").  The offense of perjury, which is a proper basis for the obstruction of justice enhancement, consists of the following elements: (1) a false statement under oath (2) concerning a material matter (3) with the willful intent to provide false testimony. *See United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *United States v. Ellison*, 336 F. App'x 483, 486 (6th Cir. 2009).  In its Sentencing Memorandum Opinion, the district court properly identified the particular portions of Watkins's testimony that it considered perjurious and supported the perjury determination with all of the necessary factual predicates:

In the instant matter, it was abundantly clear to the [C]ourt that Watkins committed perjury when he described his receipt of payments as a finder's fee. In that regard, the [C]ourt finds that the testimony of Victoria Newsome was substantially more credible than Watkins. Newsome described the payments as bribes for current contract work [with the School District] and detailed that the amounts were based upon percentages of payments under the contract. In contrast, to believe that Watkins'[s] testimony was truthful, the Court would have to conclude that he received a finder's fee for work that he never performed. Watkins testified that he believed the payment was in exchange for assisting Newsome and her company in establishing their presence in the surrounding area. However, the tapes of the encounters between Newsome and Watkins clearly indicate that Watkins expected a percentage of *something* in exchange for his work. Given that Watkins never did anything to assist Newsome, it strains logic to conclude that his cash payments were somehow a finder's fee. There is no doubt that his statements were false, made under oath, material to the matter at hand and made with a willful intent to provide false statements.

It was not clearly erroneous for the district court to conclude that Watkins's testimony was willfully false rather than the result of confusion or mistake. *See Camejo*, 333 F.3d at 675 ("[T]he district court's factual determination that defendant testified falsely about material matters—and that he did so intentionally and not because of confusion, mistake, or memory lapse—is reviewed for clear error." (citing *United States v. McDonald*, 165 F.3d 1032, 1033–34 (6th Cir. 1999))). The so-called "exculpatory no" doctrine no longer protects a defendant who falsely denies his crime. *See Brogan v. United States*, 522 U.S. 398, 408 (1998) (holding that a federal statute imposing criminal liability for making false statements to investigators does not include an exception for a false statement consisting merely of a denial of wrongdoing). Accordingly, we uphold the enhancement as appropriate.

Watkins also objects to the district court's application of a four-level enhancement under U.S.S.G. § 2C1.1(b)(3) based on its determination that Watkins occupied "a high-level decision-making or sensitive position" within the School District. Such a position is "characterized by a direct authority to make decisions for, or on behalf of, a governmental department, agency, or other governmental entity, or *by a substantial*

*influence over the decision-making process.*"   U.S. Sentencing Guidelines Manual § 2C1.1 cmt. n.4(A) (2010) (emphasis added).  The district court found as follows:

> Based upon the totality of the evidence before the Court, it is clear that Watkins had "substantial influence" over the selection process.  When bids came in, Watkins would take the 10 to 15 vendors and narrow them down to a much smaller group before presenting them to Fultz.  After narrowing the vendors down, Watkins would then recommend a particular vendor.  Those facts alone demonstrate a substantial influence on the decision-making process.  In addition to those facts, Fultz testified that Watkins had the ability to single-handedly stop payment on invoices. If Watkins expressed that a repair had not been substantially completed, Fultz would not pay the invoice.  Furthermore, Fultz testified that he was not an expert with respect to security cameras and therefore relied on Watkins because of his expertise.  Finally, Fultz explained that he relied on Watkins['s] input because Watkins had been with the [S]chool [D]istrict for a longer period of time.  All of those facts taken together demonstrate that Watkins had substantial influence over the decision-making process.

After reviewing the district court's legal interpretation of the Guidelines enhancement de novo and its factual findings for clear error, *see United States v. Kosinski*, 480 F.3d 769, 774 (6th Cir. 2007), we conclude that it properly applied this second enhancement.

Finally, Watkins argues that the district court applied a procedurally and substantively unreasonable 21-month upward variance to his sentence.  Specifically, he protests that the district court failed to justify the variance, improperly considered allegations from 2003 to infer a propensity for corrupt conduct, created an unwarranted sentencing disparity, impermissibly found the two-level enhancement for perjury insufficient, and imposed an unduly harsh sentence.  We review his sentence for reasonableness under an abuse-of-discretion standard.  *See United States v. Houston*, 529 F.3d 743, 753, 755 (6th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 45–47 (2007)).

We find no abuse of discretion here.  The district court sufficiently justified the variance, explaining that the "egregious" and "ongoing" nature of Watkins's conduct, including the "ease with which [he] accepted the bribe and then lied about it under oath,"

compelled it to vary upward to "effectuate both specific and general deterrence." Regarding general deterrence, the court additionally explained that the widespread corruption problem facing the county and surrounding areas called for a harsher sentence. *See Rita v. United States*, 551 U.S. 338, 356 (2007) (requiring that the sentencing judge "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority," but leaving to professional discretion the appropriate length and level of detail of the explanation for each case).

The other objections also fall flat. First, the sentencing memorandum opinion expressly refrains from finding that Watkins engaged in similar bribery in 2003. Instead, it infers Watkins's willingness to continue breaking the law from the behavior underlying the conviction itself, noting that "[Watkins's] actions reveal a man who is comfortable violating the law."

Second, Watkins's comparisons to state-court defendants fail to establish a relevant sentence disparity. *See United States v. Malone*, 503 F.3d 481, 486 (6th Cir. 2007) (explaining that "§ 3553(a)(6)'s admonition that sentencing courts avoid unwarranted disparities is directed only at federal court to federal court disparities, not those that may exist between federal and state courts"). Drawing comparisons with later, unrelated sentences from the Northern District of Ohio also fails to demonstrate the requisite "national disparity." *See United States v. Bacon*, 617 F.3d 452, 460 (6th Cir. 2010) (explaining that § 3553(a)(6) refers to "'national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct,' not to 'disparities between one individual's sentence and another individual's sentence'" (quoting *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007))).

Third, though the two-level obstruction of justice enhancement covers conduct that "var[ies] widely in nature, degree of planning, and seriousness," U.S. Sentencing Guidelines Manual § 3C1.1 cmt. n.3 (2010), the district court acted within its discretion in determining that the usual enhancement fails to reflect the seriousness of the offense. Particularly troubled by Watkins's ongoing insistence that his bribery attempts merely

constituted legal, "business as usual" transactions, the district court varied upward to distinguish this behavior from less egregious forms of perjury where one witness simply appears more credible than the defendant. *See, e.g.*, *United States v. Lanning*, 633 F.3d 469, 476 (6th Cir. 2011) (finding no abuse of discretion where district court thoroughly reviewed § 3553(a) factors and determined that the specific nature of defendant's actions justified upward variance); *United States v. Brock*, 501 F.3d 762, 774 (6th Cir. 2007) (affirming a 45 percent upward variance as within district court's discretion, after noting defendant's particular disrespect for the law). Though Watkins attempts to minimize the gravity of his offense, we do not find his sentence so unjustifiably harsh or arbitrary as to demonstrate an abuse of discretion. *See Gall*, 552 U.S. at 51 ("The fact that [this] court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.").[5]

### III.  Conclusion

Accordingly, we affirm Watkins's conviction and sentence.

---

[5]The dissent, sua sponte, criticizes the district court for failing to afford the parties "an adequate opportunity to confront and debate" the possibility of an upward adjustment based on "local corruption in Cleveland," citing *Irizarry v. United States*, 553 U.S. 708, 715 (2008) ("Sound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues."). But the dissent mislabels the 21-month *variance* in this case as an adjustment. *Irizarry* specifically exempted variances from a special notice requirement. *Id.* at 714 ("Adding a special notice requirement whenever a judge is contemplating a variance may create unnecessary delay."); *see id.* at 716 (expressing concern that extending notice protections to variances "is apt to complicate rather than to simplify sentencing procedures" and suggesting that a district judge responds "more appropriate[ly]" by considering a continuance *after* evaluating the legitimacy of a party's *claim* of prejudicial surprise).

   *Irizarry*'s dicta concerning good judicial practices aside, the dissent fails to cite any authority holding that the absence of notice or a continuance prior to the application of a variance, particularly where neither party raises an objection of prejudicial surprise, amounts to an abuse of discretion. Furthermore, given that the parties failed to object or to brief this issue on appeal, plain-error review applies. Because the dissent fails to address why this forfeited issue survives plain-error review, we stand by our affirmance of the 21-month variance.

_____

**DISSENT**

_____

MERRITT, Circuit Judge, dissenting.  I do not disagree with our court's opinion in this case except for the 21-month additional sentence based in part on local corruption in Cleveland.

In *Irizzary v. United States*, 553 U.S. 708, 715 (2008), the Supreme Court established a procedural principle for sentencing cases – a principle my colleagues do not take seriously in their treatment of the 21-month upward adjustment in this case:

> Sound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues.  We recognize that *there will be some cases* in which the factual basis for a particular sentence will come as a surprise to a defendant or the Government.

(Emphasis supplied.)  This is such a case.  There is nothing in the record to suggest that the district court was contemplating an upward adjustment (in sentencing law the word "adjustment" includes both variances and departures) for local corruption in Cleveland based on newspaper stories or other sources.  Neither the presentence report nor the government hinted at such a thing.  In fact, the presentence report gave notice of sentencing factors potentially warranting a *downward* adjustment under § 3553(a), and the government, for its part, specifically asked the court to sentence Watkins within, not above, the Guidelines.  The dearth of notice in this case is especially troubling because local conditions are not "[g]arden variety considerations" that a competent lawyer would naturally anticipate and prepare for prior to sentencing.  *Id.* at 716 (internal quotation marks omitted).

It is true, as the majority says, that we frequently use the expression "abuse of discretion" to describe our mind-set when reviewing cases.  But as Judge Calabresi pointed out in an *en banc* opinion that addressed a sentencing increase based on local

conditions, this standard of review is elastic and its scope should reflect an appellate court's careful consideration of the circumstances presented by each case:

> One question especially relevant to sentencing judges is to what extent may a district court, consistent with its statutory duty to consider the Guidelines, base its sentence on a policy disagreement with the Sentencing Commission?  The second question, especially relevant to courts of appeals, is to what extent must appellate courts defer to the decisions of district courts?  As Judge Henry Friendly presciently noted, abuse of discretion is not a uniform standard of review.  Henry J. Friendly, *Indiscretion About Discretion*, 31 EMORY L.J. 747, 756 (1982). Rather, where an appellate court reviews for abuse of discretion, "'the scope of review will be directly related to the reason why the category or type of decision is committed to the trial court's discretion in the first instance.'" *Id.* at 764 (quoting *United States v. Criden*, 648 F.2d 814, 817 (3d Cir.1981)).  "[D]efining the proper scope of review of trial court determinations requires considering in each situation the benefits of closer appellate scrutiny as compared to those of greater deference." *Id.* at 756.

*United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc) (citations and alterations in original).

Here, where a principle of sentencing – a "sound practice" – announced by the Supreme Court limits the sentencing court's discretion, we must also follow that principle in our review and ensure that the parties were afforded "an adequate opportunity to confront and debate the relevant issues." *Irizarry*, 553 U.S. at 715.  The defense in this case was deprived of such an opportunity.  I would therefore reverse and remand for a new hearing to address the basis for and propriety of an above-Guidelines sentence that is based in part on local conditions.

The majority opinion states in footnote 5 that the issue regarding the 21-month additional sentence based on local corruption has been "forfeited" because "the parties fail to object below or to brief this issue on appeal."  In his brief submitted to this court, however, Watkins spends pages 50-59 complaining about the additional 21-month sentence that the district court imposed.  For example, on pages 51-52, Watkins cites directly to the district court's sentencing memorandum and argues as follows:

The district court did not specify which corruption cases it was referring to, and acknowledged few sentences had been issued, but nonetheless varied upward:

> Due to the vast number of guilty pleas already generated, there is no question that bribery and corruption has run amok. Watkins contributed to that problem. As such, general deterrence in this arena is important to this court and that importance is reflected in the ultimate sentence chosen by the Court.

(Br. for Def.-Appellant 51-52.)

Further, even if Watkins had forfeited his right to challenge the upward adjustment based on local conditions, his claim survives plain error review. *See United States v. Olano*, 507 U.S. 725, 733-34 (1993) (explaining how plain error applies to forfeited claims). The district court first mentioned its intention to increase Watkins's sentence based on local corruption at the close of the sentencing hearing, after the parties had already presented their arguments. This can hardly constitute adequate notice. At the very least, the district court should have indicated to the parties at the outset of the hearing that it was contemplating an above-Guidelines sentence based on "rampant corruption" in Cleveland and solicited meaningful argument on that issue. *Cf. United States v. Cruz-Perez*, 567 F.3d 1142, 1147 (6th Cir. 2009) (finding no plain error where "the sentencing judge . . . expressly informed the parties at the outset of sentencing that he was inclined to impose a sentence greater than . . . the final calculated Guidelines range based on [defendant's] persistent and undeterred" recidivism.). Again, the district court's failure to ensure even this minimal amount of advance notice deprived the parties of an opportunity to "confront and debate the relevant issues." *Irizarry*, 553 U.S. at 715.

Also, I do not regard the language quoted above from the Supreme Court in the *Irizzary* case as having no authoritative or persuasive force. Giving parties — the defendant or the government — advance notice and an opportunity to marshal evidence and authority on an unanticipated issue seems like a good idea to me, as it did to all of the members of the Supreme Court, and certainly enhances the fairness of the sentencing procedures.