**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0114n.06

**No. 11-3822**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jan 31, 2013*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| CHRISTOPHER D. KRAUSE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  MOORE and COOK, Circuit Judges; BERTELSMAN, District Judge.[*]

COOK, Circuit Judge.   Defendant-Appellant Christopher Krause, who pled guilty to

conspiracy to commit bribery, mail fraud, theft, and to the destruction of records, appeals the

substantive reasonableness of his 87-month sentence.  He argues that in varying upward from a

Guidelines range of 51 to 63 months, the district court relied upon unproven facts, failed to consider

certain 18 U.S.C. § 3553(a) factors, and gave unreasonable weight to other factors.  We AFFIRM.

I.

Krause served as the treasurer of the Maple Heights City Schools ("MHCS") from 1997 to

September 2009.  From 2001 to 2008, Krause accepted numerous bribes in exchange for influencing

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District
of Kentucky, sitting by designation.

MHCS's business contract decisions. He also used MHCS funds for personal use. In July 2008, Krause and other participants in the bribes learned of a federal investigation into public corruption in Cuyahoga County. After news of the investigation became public in August 2008, Krause hid a $1,450-value television he previously received as a bribe. One year later, federal investigators approached Krause, who then admitted to his involvement in various bribery and embezzlement schemes at MHCS. Krause's first interview with investigators was not proffer-protected because he declined to seek defense counsel. Thereafter, Krause (with counsel) submitted to nine proffers.

Krause pled guilty to (1) one count of conspiracy to commit theft concerning programs receiving federal funds; (2) one count of conspiracy to commit mail fraud; (3) fifteen counts of conspiracy to commit bribery concerning programs receiving federal funds; and (4) one count of destruction of records in a federal investigation. His plea agreement identifies the relevant time period as "in or about 2001 through on or about July 28, 2008." The agreement also contemplates a maximum 4-level downward departure for substantial assistance under U.S.S.G. § 5K1.1, permits Krause to request a 4-level variance for non-proffer-protected cooperation with the government, and reserves the government's right to challenge such a variance. The Probation Office prepared a Presentence Report ("PSR") noting these agreements.

At sentencing, the district court determined a total offense level of 24 after applying (1) a 2-level enhancement for multiple bribes; (2) a 10-level enhancement for bribes totaling more than $120,000 and less than $200,000; (3) a 4-level enhancement for a public official in a high-level

decision-making position; (4) a 1-level adjustment for multiple counts; (5) a 3-level reduction for acceptance of responsibility; and (6) a 4-level reduction for substantial assistance. Krause's criminal category I yielded a Guidelines range of 51 to 63 months. The government requested a within-Guidelines sentence, and Krause sought a 4-level downward cooperation variance because he gave "full[]" and "immediate[]" assistance—*i.e.*, submitting to a first interview without counsel. An attorney and representative for MHCS, Julie Gran, also gave a victim impact statement contending that Krause "breached the trust that existed between community members and the district[,]" as evidenced when the community voted down an MHCS tax levy for the first time in eight years. The district court then sentenced Krause to incarceration for an aggregate term of 87 months, followed by three years of supervised release. It also ordered a special assessment of $1,800, as well as restitution totaling $209,952.50, of which Krause's pro rata share is $73,691. A month after the hearing, the court supplemented its sentencing rationale with a memorandum opinion. Krause timely appealed the 24-month upward variance.

## II.

This court applies a deferential abuse-of-discretion standard when reviewing the substantive reasonableness of a criminal sentence, "tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007); *see also United States v. Polihonki*, 543 F.3d 318, 322 (6th Cir. 2008). A sentence may be substantively unreasonable when, for example, the court "selects a sentence arbitrarily, bases the

sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008) (citing *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005)). "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010).

A.  Pre-2001 Conduct and Failed School Levy

Krause argues that the district court abused its discretion in considering, without finding by a preponderance of the evidence, that Krause engaged in pre-2001 criminal conduct and caused an MHCS levy to fail.  We disagree.

After *United States v. Booker*, 543 U.S. 220 (2005), this court "reaffirmed the doctrine that district judges in determining defendants' sentences may consider facts that they find under a preponderance-of-the-evidence standard." *United States v. Klups*, 514 F.3d 532, 537–38 (6th Cir. 2008) (quoting *United States v. Mendez*, 498 F.3d 423, 426–27 (6th Cir. 2007) (per curiam)). "Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3 cmt. (2010) (citations omitted).  Even uncharged conduct may be considered if the district court makes findings based upon a preponderance of the evidence, does not rely upon judge-found facts to impose a sentence above the statutory maximum, and understands that the Guidelines are advisory.  *See United States v. Sexton*, 512 F.3d 326, 330 (6th Cir. 2008).

A district court's factual finding in sentencing will not be set aside unless the finding is clearly erroneous, which requires that a reviewing court be "left with the definite and firm conviction that a mistake has been made." *United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008) (citing *United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999)).

At the sentencing hearing, the district court asked defense counsel how Krause, with a bachelor's degree in political science, obtained high-level financial positions with the Ohio Department of Agriculture, Ohio Supreme Court, and Cuyahoga County Treasurer's Office at various times from 1983 to 1996. Counsel explained that Krause did "a good job" in his positions and had a mentor who told Krause about opportunities such as the MHCS treasurer position. The district court also read aloud Krause's statement in the PSR that "[s]oon after" starting as the MHCS treasurer, "it became apparent to me that if I wanted to retain my position, I would have to participate in the illegal activities for which I pled guilty." R. 170, Tr. at 35, ID 916.

A fair review of the sentencing transcript suggests that the district court suspected Krause of engaging in criminal conduct before 2001. *See* R. 170, Tr. at 35–36, ID 916–17 ("[T]he defendant's own admission would indicate that perhaps this activity began even earlier than that referenced in the indictment."); *id.* at 37, ID 918 ("I have a suspicion it may have started far sooner than you're acknowledging or anyone is willing to acknowledge here."). Despite voicing this suspicion, however, the district court expressly refrained from relying on it. *See id.* at 35, ID 916 ("Now, obviously, the court can't consider or speculate whether the defendant's criminal activity

began earlier than 2001."); *id.* at 36, ID 917 ("And I asked specific questions about the defendant's mentor and how it is that he came to these various positions . . . . And, again, I want to be a bit cautious and I don't want to speculate.") As support, Krause relies on *United States v. Worex*, where this court found abuse of discretion in a district court's determination that potential involvement in uncharged shootings rendered a defendant's weapons-possession crime more dangerous. 420 F. App'x 546, 551 (6th Cir. 2011). The district court here, in contrast, disavowed using speculation in arriving at its sentencing decision. *Cf. United States v. Watkins*, 691 F.3d 841, 853 (6th Cir. 2012) ("[T]he sentencing memorandum opinion expressly refrains from finding that [defendant] engaged in similar bribery in 2003. Instead, it infers [defendant's] willingness to continue breaking the law from the behavior underlying the conviction itself . . . ."). The instant record leaves us unconvinced that the district court abused its discretion.

So too with the court's consideration of the failed levy. When delivering MHCS's victim impact statement, Julie Gran explained how Krause's crimes breached community trust in the school district:

> [W]hen the treasurer of a school district, a person who has ultimate control over public funds and the flow of money and the financial information . . . ask[s] contractors for bribes or [takes] money for himself, . . . it absolutely violates the trust that each member of the community has put in the people who serve their children.

R. 170, Tr. at 27, ID 908. She also explained how Krause's conduct hurt MHCS's public reputation, citing as evidence the failed levy:

> Krause's actions don't reflect the dedication and the quality of employees who work in the district, but it will continue to affect them in the future . . . .
>
> What he did causes taxpayers to question whether the district is spending their money fairly and wisely when a tax levy is put on the ballot. And this was unfortunately demonstrated most recently on May 3 when, for the first time in eight years, the taxpayers of the district voted down a levy issue and did not support the levy issue or a bond issue that was on the ballot.

*Id.* The PSR similarly noted reputational damage to MHCS as a result of Krause's conduct, identifying $300,000 as the "[p]rospective cost of public relations services to repair damage from criminal acts of defendants."[1] PSR ¶¶ 55, 56. Krause too recognized that his crimes generated negative publicity. *See* Appellant Br. at 29 ("It is true that Mr. Krause violated the public trust . . . . [T]he members of the Maple Heights community have every right to be upset for his behaviors."); R. 157, Def. Sentencing Br. at 6, ID 844 ("[Krause] . . . has suffered public disgrace in both the media and in his community"). Moreover, this district court knew about abundant publicity surrounding the Cuyahoga County corruption scandals. Relying on this record, the district court inferred that Krause's crimes hurt MHCS's public image. *See* R. 161, Sent'g Mem. at 6, ID 865 ("[T]he school's public reputation is vital to gaining public support for any operating levy. Following the scandal involving Krause and his co-defendants, the citizens of Maple Heights were unwilling to pass a levy, demonstrating the public's lost trust in the district."). On review, we cannot say that this record leaves a "definite and firm conviction that a mistake has been made." *See Jeross*, 521 F.3d at 569 (citation omitted); *cf. United States v. Korson*, 243 F. App'x 141, 148 (6th Cir.

---

[1]This cost was ultimately withdrawn from the claimed restitution.

2007) (per curiam) (affirming upward departure under U.S.S.G. § 2B1.1 in part because victim impact letters supported finding that schools suffered negative community relations as a result of defendant's embezzlement). Accordingly, the district court's inference cannot be assessed as clearly erroneous.

B. Section 3553(a) Factors

Krause next argues that the district court imposed a greater-than-necessary sentence because it failed to consider certain 18 U.S.C. § 3553(a) factors (the need for rehabilitation, lack of criminal history, and cooperation with the government) and accorded too much weight to other factors (the severity of offense, need for punishment, and need for deterrence). We reject these arguments.

Section 3553(a) directs district courts to impose "a sentence sufficient, but not greater than necessary" (1) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (2) "to afford adequate deterrence to criminal conduct"; (3) "to protect the public from further crimes of the defendant"; and (4) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). "Not all are important in every sentencing; often one or two prevail, while others pale." *United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007).

First, Krause waived any rehabilitation-based argument in his sentencing brief to the district court. *See* R. 157, Def. Sentencing Br. at 7, ID 845 ("Concerning § 3553(a)(2)(D)[,] . . . Defendant

submits that, given his age and circumstances, other than medical care for his minor conditions for which he is currently taking medication, none of these factors are materially present.").

The record further shows that the district court reasonably weighed the other 3553(a) factors. It justifiably rejected Krause's request for a 4-level downward cooperation variance, citing Krause's obstructive conduct in hiding a television upon learning of a federal investigation in August 2008 and his year-long delay in coming forward until the FBI approached him in August 2009. It likewise considered Krause's lack of criminal convictions, but decided that his lack of genuine remorse and "upper echelon" participation in "wide ranging" public corruption weighed in favor of an above-Guidelines sentence. The court also found the statutory maximum sentences instructive, given that Krause was not a "victim of circumstance," but "an individual motivated by greed" who "formulated bribery scheme after bribery scheme . . . to increase his own personal wealth." As the court observed, its 87-month sentence was "below half the halfway point" of the 20-year statutory maximum on two counts. It thus reasonably concluded that an upward variance was necessary to protect the public, deter Krause, and deter others from committing similar crimes.

Finally, Krause argues that his sixteen-level Guidelines enhancement sufficiently captures the severity of his crime. This court, however, "ha[s] rejected the argument that a sentence is substantively unreasonable because the § 3553(a) factors on which the district court relied to sentence the defendant outside the advisory Guidelines range were already reflected in the Guidelines

calculation."    *See United States v. Rossi*, 422 F. App'x 425, 436 (6th Cir. 2011) (citing

*Tristan-Madrigal*, 601 F.3d at 636 n.1 (6th Cir. 2010)).

III.

We AFFIRM.